# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| IN RE TAASERA LICENSING LLC, PATENT LITIGATION | § § § | Case No. 2:22-MD-03042-JRG |
| THIS DOCUMENT RELATES TO CASE NO. 2:23-cv-00113-JRG | § § § | |
| TAASERA LICENSING LLC, *Plaintiff*, v. PALO ALTO NETWORKS, INC., *Defendant*. | § § § § § § § § § § § | Case No. 2:23-cv-00113-JRG |

**REPLY IN SUPPORT OF DEFENDANT PALO ALTO NETWORKS, INC.'S PARTIAL MOTION TO DISMISS UNDER <u>FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)</u>**

PAN respectfully submits this reply in support of its partial motion to dismiss, which is substantively the same as its reply in support of its motion for partial judgment on the pleadings that was orally argued on February 21, 2023.  *See* Case No. 2:22-MD-03042-JRG, ECF No. 119.

Nothing in Taasera's response presents arguments that overcome patent ineligibility of the five patents challenged in PAN's motion.  To the contrary, Taasera's response further demonstrates why all asserted claims of these patents are plainly directed to abstract ideas.  Taasera also alleges no inventive concept outside the abstract realm but instead generically invokes "claim construction" and "factual issues" in a hand-waving attempt to delay the § 101 inquiry.  Opp. 4.  Taasera's hand-waving response is telling because it does not meaningfully articulate any alleged significance of claim construction to the § 101 inquiry or cite any material factual issues.

Nor does Taasera's response change the fact that its claims are ineligible because, "with the exception of generic computer-implemented steps, there is nothing in the claims themselves that foreclose them from being performed by a human." *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1318 (Fed. Cir. 2016).  Moreover, because PAN's motion explained how claim 1 of each challenged patent is representative, "the burden shifts to [Taasera] to identify limitations that are present in [other] claims but that are not represented by the allegedly representative claim." *PPS Data, LLC v. Jack Henry & Assocs., Inc.*, 404 F. Supp. 3d 1021, 1031–32 (E.D. Tex. 2019).  In response, Taasera concedes representativeness and addresses only claim 1 of each patent, without citing any other claims.  Thus, the Court may "treat [claim 1 of each patent] as representative" of all asserted claims in each respective patent, which are invalid.  *Id.* at 1032.

**The '796 patent** is directed to identifying and extracting information by matching a pattern.  Mot. 2–4.  Taasera does not meaningfully dispute this.  It agrees the claims recite three steps: (1) "identifying" a "regularly identifiable expression" "in accordance with a programming

1

language," (2) "identifying" a "portion of information," and (3) "extracting" it. Opp. 3. Taasera's main argument is that the claims recite the "use of 'a programming language,'" and this language alone renders the claims patent-eligible because this "cannot be 'performed by a human.'" Opp. 3. But merely adding "in accordance with a programming language" to abstract human activities is the type of "generic computer-implemented" limitation that cannot impart eligibility. *Intell. Ventures*, 838 F.3d at 1318; *accord Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 223 (2014). That is especially true here since the '796 patent admits "common programming languages" had "built-in support for regular expressions." '796 pat. 2:25–27; *see also id*. at 3:22–31.[1]

At step two, the only alleged inventive concept is a statement in the *specification* about "explicitly identify[ing] portions of data in a document that a user seeks to be identified, e.g., relevant or important information." Opp. 5; '796 pat. 1:53–55. Yet the step-two inquiry "cannot . . . import details from the specification." *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd*., 955 F.3d 1317, 1328 (Fed. Cir. 2020). Taasera also ignores the immediately preceding statement that this benefit results from "the readily-identifiable structure of language," not any technical advance. '796 pat. 1:52–53. Identifying "relevant or important information" (Opp. 5) is what humans do when reading a document and fails to provide "an inventive concept in the non-abstract application realm." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1168 (Fed. Cir. 2018).

**The '356 patent** is directed to sorting data—i.e., classifying a packet as a new exploit candidate—based on the same if/then logic that was previously used by "a human analyst." Mot. 6; '356 pat. 2:50–57. Taasera does not rebut this and merely alleges that having humans perform

---

[1] *See Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1181 (Fed. Cir. 2020) (claim reciting "computer program code" to perform functions was abstract); *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 992 (Fed. Cir. 2014) (rejecting notion that a method "cannot be an abstract idea because a human, unaided by devices, could not perform" it since "abstract ideas [are] not limited to methods that can be performed in the human mind").

this task was "time consuming" and "prone to error." Opp. 7. As PAN explained in its motion, however, such "generic speed and efficiency improvements" do not render claims patent-eligible. *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020); Mot. 8.

Taasera also errs in relying on *Communication Interface Technologies, LLC v. Albertson's LLC*, No. 4:20-CV-550-SDJ, 2021 WL 4453580 (E.D. Tex. Sept. 29, 2021), which is inapposite. The patent there claimed a specific technique—"virtual session reconnection at the application session layer of the protocol stack for a particular application program"—that improved computer functionality "by eliminating the need for full session authentication and negotiation procedures" and "maintain[ing] a seamless and transparent plurality of virtual sessions." *Id*. at *7–8.

Nothing in the '356 patent or Taasera's counterclaims allege any such improvement. Its response offers only attorney argument that the '356 patent "improve[s] the function of the computer itself by solving problems with computer security," without identifying what those "problems" are. Opp. 6. At most, Taasera says the invention "analyzes packet data moving through a network to identify new computer viruses, worms, exploits, etc." and alleges this "could not be performed by a human." *Id*. But the '356 patent refutes this, admitting "[i]t is known for a human analyst to analyze all of the packets . . . to determine their type," e.g., "viruses, worms," or "harmless broadcast traffic, network administration, or web crawler requests." '356 pat. 2:50–57.

At step two, Taasera errs by reciting at length from the specification (Opp. 8), which "cannot be used to import details." *Ericsson*, 955 F.3d at 1328. Its reliance on *Finjan, Inc. v. Blue Coat Systems, Inc.*, 879 F.3d 1299 (Fed. Cir. 2018), is equally misplaced. *Finjan* contrasted "traditional . . . systems, which simply look for the presence of known viruses," with Finjan's "'behavior-based' scans [that] can analyze a downloadable's code and determine whether it performs potentially dangerous or unwanted operations." *Id*. at 1304. Unlike Finjan's invention,

3

the '356 patent does what was "traditional"—i.e., "look for the presence of known viruses," which *Finjan* actually confirms "is well-known and constitutes an abstract idea." *Id.* (quotation omitted).

**The '517 patent** is directed to assigning a score based on risk. Mot. 10–12. Taasera does not dispute that humans routinely assign scores based on risk (e.g., credit scores) but argues that claim 1 is eligible because "it includes a processing device that implements the identification of the behavior score." Opp. 9–10. Again, Taasera is wrong; mere mention in the claims of "a generic computer" does not, on its own, impart eligibility. *Alice*, 573 U.S. at 223. Nor does claim 1 limit how this "processing device" identifies the "behavior score." It merely recites the "function or outcome, without providing any limiting detail," which "confirms that it is directed to an abstract idea." *Affinity Labs of Tex., LLC v. Amazon.com, Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016).

At step two, Taasera imports numerous details from the specification (Opp. 11–12) and alleges that "the innovative usage" of the claimed invention is that it "identifies a behavior score based on an identified 'runtime risk'" (Opp. 11). Yet identifying a score based on risk "cannot be an inventive concept here, because it is the abstract idea that the claims are directed to." *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1349 (Fed. Cir. 2019). Thus, Taasera's argument that genuine factual disputes can defeat eligibility challenges (Opp. 2) misses the mark because the inventive concepts alleged by Taasera are all either in the specification (not the claims) or "simply restate[] . . . an abstract idea," and "it is irrelevant whether [an abstract idea] may have been non-routine or unconventional as a factual matter." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1291 (Fed. Cir. 2018). "As a matter of law, narrowing or reformulating an abstract idea does not add 'significantly more' to it" as *Alice* step two requires. *Id*.

**The '038 and '918 patents** are directed to "controlling access to computing resources based on known computing security vulnerabilities" ('038 pat. 1:22–25)—i.e., "the abstract idea

4

of controlling access to, or limiting permission to, resources" (*Ericsson*, 955 F.3d at 1326). Without attempting to distinguish *Ericsson*, Taasera analogizes to *Enfish* and *eCeipt LLC v. Homegoods, Inc.*, 2019 WL 10302271, at *5 (W.D. Tex. May 20, 2019). Those cases, however, alleged specific improvements to computer functionality. *Id*. at *5. In *eCeipt*, the complaint explicitly pleaded the "problems and needs with prior POS systems." *Id*. Yet Taasera does not cite any allegations in its counterclaims, which are silent about any alleged improvement.

The only alleged benefit Taasera points to is "flexibly managing corporate security policies" by (1) configuring "a plurality of policies," (2) collecting information about "operating conditions" and "status information," and (3) determining "a compliance state" from that information. Opp. 13–14. But collecting information and checking for policy compliance is not a *technological* improvement because, other than "generic computer-implemented steps," nothing prevents humans from performing these tasks "mentally or with pen and paper" (*Intell. Ventures*, 838 F.3d at 1318), especially since the claims do not specify *how* a "compliance state" is assessed.

At step two, Taasera relies entirely on embodiments in the specification of a "policy management system" and "compliance analysis engine" that are not in the claims. Opp. 15; *contra Ericsson*, 955 F.3d at 1328. Regardless, even the specification fails to explain how these embodiments perform their recited functions, stating only that they store "various policy information" and "process [ ] condition information in accordance with the security policies . . . to generate security rules." Opp. 15. These are not technological improvements in the claims but merely automate human tasks of recording policies, monitoring compliance, and generating rules. "No matter how much of an advance" these embodiments reflect for corporate policy governance, "the advance lies entirely in the realm of abstract ideas." *SAP*, 898 F.3d at 1163.

Thus, all challenged claims are ineligible for patenting under 35 U.S.C. § 101.

Dated: April 27, 2023

By: */s/ Michael R. Rueckheim*
Kelly C. Hunsaker
KHunsaker@winston.com
Michael R. Rueckheim
(Texas State Bar No. 24081129)
MRueckheim@winston.com
Eimeric Reig-Plessis
EReigPlessis@winston.com
WINSTON & STRAWN LLP
225 Shoreline Drive, Suite 520
Redwood City, CA 94065
Telephone: (650) 858-6500
Facsimile: (650) 858-6550

Melissa Richards Smith
(Texas State Bar No. 24001351)
melissa@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, TX 75670
Telephone: 903-934-8450
Facsimile: 903-934-9257

ATTORNEYS FOR DEFENDANT,
PALO ALTO NETWORKS, INC.

**CERTIFICATE OF SERVICE**

The undersigned herby certifies that on April 27, 2023, a true and correct copy of the forgoing REPLY IN SUPPORT OF DEFENDANT PALO ALTO NETWORKS, INC.'S PARTIAL MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) was electronically filed via the Court's CM/ECF system, which sends notifications of such filing to all counsel of record who have consented to accept service by electronic means.

                                                                           */s/ Michael R. Rueckheim*
                                                                           Michael R. Rueckheim