# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| IN RE: TAASERA LICENSING LLC, PATENT LITIGATION <br><br> THIS DOCUMENT RELATES TO CASE NO. 2:23-cv-00113-JRG | Case No. 2:22-md-03042-JRG <br><br> **JURY TRIAL DEMANDED** |
| TAASERA LICENSING LLC, <br><br> Plaintiff, <br><br> v. <br><br> PALO ALTO NETWORKS, INC., <br><br> Defendants. | Case No. 2:23-cv-00113-JRG <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF TAASERA LICENSING LLC'S SUR-REPLY IN FURTHER OPPOSITION TO DEFENDANT PALO ALTO NETWORKS, INC.'S PARTIAL MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) (DKT. 15)**

I.       INTRODUCTION

Palo Alto Networks, Inc.'s ("PAN") Reply Brief (Dkt. 25, "Reply") confirms that material issues of fact remain regarding whether the claims are directed to abstract ideas and, if so, whether the claims are directed to routine, well-known, and conventional ideas. Although it is also clear that claim construction is required to resolve this dispute, PAN's Motion can be denied at the Rule 12 stage based on the multitude issues of material fact. PAN's Reply continuously and repeatedly inserts attorney argument in place of expert testimony, never states the level of skill in the art that should be applied to the POSITA[1] for each patent in determining the inventive concepts, ignores claim elements entirely, fails to treat the claims as an ordered combination, and improperly states that the specification is to be ignored in interpreting the claims. Therefore, PAN's Motion should be denied. PAN must show by clear and convincing evidence that a skilled artisan would have found the claims abstract, and that the claims contain no more than routine, well-known, and conventional components. PAN has not done so.

II.      ARGUMENT

That the patents at issue in this Motion are directed to software-based improvements is not itself determinative of the Section 101 inquiry. Software can make patent-eligible improvements to computer technology, as it does here. *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1309 (Fed. Cir. 2020).

      A.       **The '796 Patent**

There is a dispute regarding whether the '796 Patent is directed to "identifying and extracting information by matching a pattern" as argued by PAN (Reply at 1), or whether the claim

---

[1] "The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

element requiring that the expression "represents a pattern that is matchable in accordance with a programming language" removes these claims from the construct of *Alice* Step 1 (*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014)). Whether this is a "generic computer-implemented step" that can or cannot impart eligibility is a question of fact, and the scope of the "programming language" claim element will be a matter of claim construction. This is not an instance of reciting "computer program code" to perform a known function, but rather limits the claim to regular expressions that are known within the programming language.

Regarding Step 2, PAN errs in arguing that the specification must be ignored when making this determination. Under *both* Step 1 and Step 2, the specification must be considered. *Mentone Sols. LLC v. DIGI Int'l Inc.*, No. 2021-1202, 2021 WL 5291802, at *4 (Fed. Cir. Nov. 15, 2021); *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1368 (Fed. Cir. 2020) ("We also consider the patent's written description, as it informs our understanding of the claims."); *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 774 (Fed. Cir. 2019) (relying on specification to determine inventive concept). Prior to claim construction and in the absence of expert testimony regarding the scope and content of the prior art, the level of skill in the art, or any other question of fact, the specification is the only guide. Because the specification indicates that the claims of the '796 Patent are not routine, well-known, and conventional, PAN's Rule 12 Motion on Step 2 fails.

### B.    The '356 Patent

The claims of the '356 Patent relate to screening packets of information, which cannot be performed by humans. This claim is on point with *Commc'n Interface Techs., LLC v. Albertson's LLC*, No. 4:20-CV-550-SDJ, 2021 WL 4453580 (E.D. Tex. Sept. 29, 2021), in which computer functionality was improved by eliminating certain authentication procedures when virtual sessions were disconnected and then reconnected. The '356 Patent similarly improves computer functionality by *automatically* determining if a packet is a new exploit candidate and eliminating

prior "honeypot-" type intrusion detection systems. Dkt. 1-3, '356 Patent at 2:38-3:5. Eliminating the honeypot-type systems improves functionality of the system, as explained by the '356 Patent, because the honeypot "is not serving any useful function to the enterprise or network." *Id*. at 2:47-48. The patent also explains that "the shear number of packets received by the honeypot delays the detection of new computer attacks, viruses, computer worms and exploitation code." *Id.* at 3:2-5. Because eliminating the honeypot is a concrete improvement to the functionality of the intrusion detection system, the claims are not directed to an abstract idea.

Regarding Step 2, other than continue to misrepresent the scope of the claims, PAN provides no additional evidence or expert testimony that could possibly meet its burden to show that the claims are directed to routine, well-known, and conventional ideas.

C.   The '517 Patent

There is a dispute regarding whether the '517 Patent is directed to "assigning a score based on risk," as argued by PAN, or whether structural claim elements, such as the "runtime monitor including a processing device," are concrete improvements 'Dkt. 1-5, 517 Patent, Claim 1, 10:9-10 (Reply at 4). The claims additionally require "a rules database" and "a policy database." These additional structural limitations, which are not generic computers, are not addressed by PAN at all. PAN's final argument on Step 1 is that it cannot determine "how" the processing device identifies the behavior score. Reply at 4. This admission that the scope of the claim is unclear further evidences that claim construction is required. Further, claim 1 states that the runtime monitor identifies the behavior score "based on the identified runtime risk," which is determined based on the assessment policy stored in the policy database. *See* Claim 1. This is a concrete improvement.

PAN argues on Step 2 that the only inventive concepts identified by Taasera are either in the specification, or restatements of the abstract idea. First, again PAN fails to identify the level of skill in the art that pertains to this patent and fails to present expert testimony regarding what would

have been routine, well-known, and conventional to that skilled artisan. Second, the runtime monitor disclosed and claimed in the '517 Patent was allowed over the prior art of record because the "rules that identify *action sequences* of actions performed by users, applications, or systems are used in assessment policies, which identify a runtime risk for an application program that executes on a device, and *the identified runtime risk indicates a risk or threat of the identified action sequence of the application*." Ex. 1, '517 Patent File History, Nov. 12, 2013 Response to Office Action, at 12. These action sequences that are used to identify the runtime risk were not routine, well-known, and conventional.

### D.   The '038 and '918 Patents

There is a dispute regarding whether the '038 and '918 Patents describe and claim concrete solutions to the technical problems of controlling access to endpoint systems. For example, the '038 Patent describes that the prior art was lacking "the ability to define via configuration settings parameter values for different users and user groups" and also lacking are "useful, functional, management reports as well as dynamic, functional and user-friendly access control capabilities." Dkt. 1-6, '038 Patent at 3:20-29; Dkt. 1-9, '918 Patent at 3: 29-36. The '038 and '918 Patents describe and claim one or more "software agents" that are configured on the endpoint that monitor operating conditions, and a computing system that is remote from the endpoint containing policies in a data store that receives information from these software agents and determines a compliance state of the endpoint. *See, e.g.*, '038 Patent, Claim 1. These software agents, distributed in nature, are not generic computers and are not abstract under *Alice* Step 1. PAN states, without explanation, that *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016) and *eCeipt LLC v. Homegoods, Inc.*, No. W-19-CV-00032-ADA, 2019 WL 10302271 (W.D. Tex. May 20, 2019) "alleged specific improvements to computer functionality," whereas Taasera's counterclaims in this case are silent about any alleged improvement. Reply at 5. But here, the patents themselves

describe and claim specific improvements to computer functionality—"[h]eightened awareness and dynamic, autonomous adjustment to alert and enforcement thresholds based on condition data" . . . "use of quantitative analysis models in end point inspection, analysis and policy enforcement" . . . "[g]ranular and wide ranging policy enforcement capabilities, *i.e.* ability to influence a number of agents and conditions simultaneously," etc. '038 Patent, 59:44-60:26. These concrete *technological* improvements are not abstract under *Alice* Step 1.

Regarding Step 2, PAN again cannot state what is routine, well-known, and conventional to the skilled artisan (which is undefined), merely re-stating its position that the claim is the automation of human tasks, and therefore any novelty in the claims is in the realm of abstract ideas. But the "compliance analysis engine" that is described and claimed provides a multitude of tangible computing benefits, as described in the '038 and '918 Patents themselves. *See, e.g.*, '038 Patent, 59:31-60:31. The intrinsic record of these patents is all that is currently before the Court regarding the scope of the prior art and the novelty claimed by these patents. Therefore, PAN cannot meet its burden to show that these patents are ineligible under 35 U.S.C. § 101.

Dated: May 4, 2023

Respectfully submitted,

/s/ *Alfred R. Fabricant*
Alfred R. Fabricant
NY Bar No. 2219392
Email: ffabricant@fabricantllp.com
Peter Lambrianakos
NY Bar No. 2894392
Email: plambrianakos@fabricantllp.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@fabricantllp.com
Joseph M. Mercadante
NY Bar No. 4784930
Email: jmercadante@fabricantllp.com
**FABRICANT LLP**
411 Theodore Fremd Avenue,
Suite 206 South

Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

Samuel F. Baxter
Texas State Bar No. 01938000
Email:  sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
Email: jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 E. Houston Street, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

***ATTORNEYS FOR DEFENDANT
TAASERA LICENSING LLC***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on May 4, 2023, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

/s/ Alfred R. Fabricant
Alfred R. Fabricant